IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 2, 2016

**KEARN WESTON v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 11-02875      James C. Beasley, Jr., Judge**

_____

**No. W2015-00460-CCA-R3-PC  -  Filed March 29, 2016**

_____

Petitioner, Kearn Weston, appeals the denial of his petition for post-conviction relief. Petitioner argues that he received ineffective assistance of counsel when trial counsel failed to file a pre-trial motion to dismiss the charge based on the loss of a surveillance video.  Upon our review, we affirm the decision of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Andrew R. E. Plunk, Memphis, Tennessee, for the appellant, Kearn Weston.

Herbert H. Slatery III, Attorney General and Reporter; Lacy Wilber, Senior Counsel; Amy P. Weirich, District Attorney General; and Ann Schiller, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

_Factual and Procedural Background_

On October 6, 2011, Petitioner was convicted by a Shelby County jury of one count of robbery.  _See State v. Kearn Weston_, No. W2012-00255-CCA-R3-CD, 2012 WL 5986542, at *1 (Tenn. Crim. App. Nov. 30, 2012), _perm. app. denied_ (Tenn. Apr. 10, 2013).  Petitioner was sentenced to fourteen years of incarceration.  The only issue raised on appeal was the sufficiency of the evidence.  This Court affirmed Petitioner's conviction.  _Id._

According to the evidence presented at trial, on September 15, 2010, the victim, James Black, was at a gas station about to pump gas into his vehicle. Petitioner hit Mr. Black from behind, causing Mr. Black to fall "onto a steel bolt-like cap covering the pipe to the underground gas tank, breaking a rib." *Id*. Petitioner stood over the victim saying, "Give me that money." *Id*. Mr. Black told Petitioner that he did not have any money, and Petitioner began to leave. Petitioner then saw Mr. Black's wallet on the ground, "snatched" it, and "took off running." *Id*. This encounter was witnessed by two bystanders and an employee of the gas station. *Id*. at *1-2. The victim and the three witnesses all identified Petitioner in a photographic line-up. The gas station manager testified that he viewed a surveillance video of the robbery, that he recognized Petitioner as a regular customer, and that he called the police when he saw Petitioner waiting at a bus stop near the gas station a few months later. *Id*. at *2-3. In his defense, Petitioner called Sergeant Timothy Foster, the case officer for this incident, who testified that the surveillance video was obtained by the police but had since been misplaced. *Id*. at *3.

On July 30, 2013, Petitioner filed a petition for post-conviction relief. Petitioner alleged that he had received ineffective assistance of counsel because trial counsel failed to challenge the loss of the surveillance video pursuant to *State v. Ferguson*, 2 S.W.3d 912 (Tenn. 1999).[1] Petitioner asserted that the video would have shown that someone other than Petitioner attacked Mr. Black. Petitioner also asserted that because a motion with regard to the video was never filed by trial counsel, the *Ferguson* issue was waived on appeal.

At the beginning of the January 30, 2015 evidentiary hearing, post-conviction counsel noted that Petitioner's trial counsel was deceased and that the original prosecutor was also unavailable to testify. However, Petitioner's appellate counsel, who worked for the Public Defender's Office with trial counsel, was available to testify. A transcript of the original trial was admitted into evidence.

Petitioner testified that he was informed there was surveillance video of the robbery when he was interviewed by Sergeant Foster. Petitioner claimed that he was told that he would be shown the video if he confessed first. Petitioner testified that he denied any knowledge of the crime and that Sergeant Foster got mad at him. Petitioner testified that he informed trial counsel of the video and that trial counsel responded that he already knew the video was lost. Trial counsel did not file any motion with regard to the loss of the video, despite Petitioner's wishes. Petitioner testified that the video would have played a significant role in his defense as "it would have shown somebody else

---

[1] Other issues raised in the pro se petition were not raised on appeal and are, therefore, deemed abandoned. *See Ronnie Jackson, Jr. v. State*, No. W2008-02280-CCA-R3-PC, 2009 WL 3430151, at *6 n.2 (Tenn. Crim. App. 2009), *perm. app. denied* (Tenn. Apr. 16, 2010).

committing that crime." Petitioner insisted that he could not have committed the crime because he is legally blind and would not have been able to flee across a busy street. Petitioner testified that he suspected that the officers intentionally lost the video after they viewed it and saw that Petitioner was not the person robbing the victim.

On cross-examination, Petitioner admitted that he told the trial court that the charge should be dismissed because there was no video and no confession but claimed that he did so after the trial rather than before as reflected in the prosecutor's notes. Petitioner admitted that he was present when police officers testified at trial that the video was lost. Petitioner remembered that trial counsel approached the bench prior to the testimony of one of the witnesses, but he could not hear what was being discussed. Petitioner initially denied that either the gas station employee or manager testified that they knew who Petitioner was based on having seen the video but later admitted that they recognized him as a regular customer. Petitioner admitted that the victim and the witnesses identified him in court but asserted that the victim had misidentified him and that one of the witnesses "told fabricating [sic] testimony."

Appellate counsel testified that he had a chance to review trial counsel's file before the hearing. Appellate counsel did not see in trial counsel's file any indication that a pre-trial motion had been filed regarding the loss of the video. Appellate counsel testified that because the issue was not listed in the motion for new trial, he could not raise it on appeal. The sole issue raised on appeal was the sufficiency of the evidence. On cross-examination, appellate counsel testified that he did not believe that the video would have been exculpatory based on the testimonies of the witnesses and that he did not believe that it was a "viable issue," even under plain error.

At the conclusion of the hearing, the post-conviction court made oral findings of fact and conclusions of law. The court found that Petitioner did not receive ineffective assistance of counsel. The court found that trial counsel successfully objected to testimony regarding the contents of the video and vigorously cross-examined the witnesses about the lost video. The court found that trial counsel had put before the jury the fact that there was "poor sloppy police work in losing the video" and that "the issue of the video was very much litigated." However, the court was "not sure that there would be a valid basis to dismiss the charges because the video was lost." The court noted that the proof against Petitioner was overwhelming, including multiple eyewitness identifications independent of the video. The court could not remember if trial counsel requested a jury instruction on lost evidence but held that such a request, if made, would have been denied because the testimony indicated that the video was not exculpatory. On February 2, 2015, the post-conviction court entered an order denying the petition for post-conviction relief. Petitioner filed a timely notice of appeal.

*Analysis*

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See Burnett v. State*, 92 S.W.3d 403, 408 (Tenn. 2002). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999). A defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). This Court will not use hindsight to second-guess a reasonable trial strategy, *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994), even if a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim.

App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting *Goad*, 938 S.W.2d at 369). However, this deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the *Strickland* test in order to obtain relief. Prejudice is shown where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Id.*

Whether a petitioner has been denied the effective assistance of counsel presents a mixed question of law and fact. *Burns*, 6 S.W.3d at 461. This Court will review the post-conviction court's findings of fact "under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley*, 960 S.W.2d at 578). This Court will not re-weigh or re-evaluate the evidence presented or substitute our own inferences for those drawn by the trial court. *Henley*, 960 S.W.2d at 579. Questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court. *Momon*, 18 S.W.3d at 156 (citing *Henley*, 960 S.W.2d at 578). However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Fields*, 40 S.W.3d at 458.

Petitioner argues that the trial court erred in determining that he did not receive ineffective assistance of counsel. Petitioner argues that trial counsel's performance was deficient when he failed to file a motion, pursuant to *Ferguson*, to dismiss the charge based on the loss of evidence. The State responds that trial counsel was not deficient for failing to file such a motion and that Petitioner failed to show that he suffered prejudice thereby.

In the case of *State v. Ferguson*, 2 S.W.3d 912, 916 (Tenn. 1999), our supreme court adopted a test for courts to use in determining whether the loss or destruction of evidence in the State's possession deprived the defendant of a fair trial. The initial inquiry is whether the State had a duty to preserve the evidence:

> Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a

significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

*Id.* at 917 (quoting *California v. Trombetta*, 467 U.S. 479, 488-89 (1984)). If the proof demonstrates that the State failed in its duty to preserve evidence, "the analysis moves to a consideration of several factors which guide the decision regarding the consequence of the breach." *Id.* Those factors include "(1) the degree of negligence involved; (2) the significance of the destroyed evidence, considered in light of the probative value and reliability of secondary or substitute evidence that remains available; and (3) the sufficiency of the other evidence used at trial to support the conviction." *Id.* If a trial without the missing evidence would be fundamentally unfair, the trial court may dismiss the charges, give a jury instruction, or "craft such orders as may be appropriate to protect the defendant's fair trial rights." *Id.*

Petitioner has failed to show that he suffered prejudice by trial counsel's failure to file a motion to dismiss pursuant to *Ferguson*. In order for the *Ferguson* rule to apply, the evidence must "possess an exculpatory value that was apparent before the evidence was destroyed." *Id.* In this case, two witnesses—one of whom also witnessed the robbery itself—testified that they viewed the video and that they recognized Petitioner as a regular customer at the gas station. Additionally, both the victim and the two bystanders positively identified Petitioner in photographic lineups and in court, independent of the video. There was no indication, other than from Petitioner's own testimony at the post-conviction hearing, that the video depicted anyone other than Petitioner robbing the victim. Therefore, it is unlikely that the trial court would have determined that a trial without the video would be fundamentally unfair. Because a motion to dismiss, even if filed, would not have been successful, Petitioner has failed to show that he was prejudiced by trial counsel's failure.

Furthermore, we cannot say that trial counsel's failure to file a motion to dismiss based on the loss of the video was deficient performance. Given the fact that trial counsel called Sergeant Foster to testify about the loss of the video and the fact that he strenuously objected to the witnesses testifying about the contents of the video, it would appear that the failure to file a motion to dismiss was a tactical decision.[2] As the post-

---

[2] We acknowledge that because trial counsel is deceased, it is difficult to determine whether the failure to file a motion to dismiss based on the loss of the video was in fact a tactical decision and whether it was based upon adequate preparation. *See Cooper*, 847 S.W.2d at 528. However, because we have previously determined that Petitioner failed to show that he was prejudiced, he would not be entitled to relief even if this failure to file a motion to dismiss was deficient performance. *See Henley*, 960 S.W.2d at 580; *Goad*, 938 S.W.2d at 370.

conviction court found, the issue of the lost video "was very much litigated." Petitioner has failed to show that trial counsel's performance was in any way deficient. Petitioner is not entitled to relief.

*Conclusion*

Based on the foregoing, we affirm the judgment of the post-conviction court.


_____
TIMOTHY L. EASTER, JUDGE